# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-22-00583-CV

### J. C. and A. C., Appellants

### v.

### Texas Department of Family and Protective Services, Appellee

### FROM THE 35TH DISTRICT COURT OF MILLS COUNTY
### NO. 21-03-7259, THE HONORABLE CHERYLL MABRAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

J.C. (Father) and A.C. (Mother) appeal from a judgment terminating their parental rights to T.C. (aged 13 at trial), K.C. (12), Z.C. (9), and J.C., Jr. (6).[1] They argue in two issues that legally and factually insufficient evidence supports the district court's findings of two statutory predicates and that termination is in the best interest of the children. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O), (b)(2). We affirm.

## BACKGROUND

In February of 2021, the Department of Family and Protective Services received a referral alleging ongoing domestic violence in appellants' home and that both were using controlled substances. The Department was granted temporary conservatorship over the children

---

[1] We refer to the children by their initials and their family members by their relationships to the children. *See* Tex. R. App. P. 9.8; Tex. Fam. Code § 109.002(d).

and sued to terminate the rights of both parents. The parties tried the case to the bench before an associate judge on July 26, 2022. The associate judge heard testimony from Department investigator Madeline Miller, the Department conservatorship worker assigned to the case, the Court Appointed Special Advocate (CASA), Father, and Mother.

Miller testified that she was unable to visit appellants' residence immediately because Winter Storm Uri made travel impossible. Deputies with the Mills County Sheriff's Department made contact and reported that there were no immediate safety concerns. Miller met with appellants after the roads cleared, and they denied domestic violence or drug use. Appellants each took an oral drug screen, both of which were positive for methamphetamine and amphetamine. With the Department's consent, Paternal Grandmother—who owned the residence—moved in to supervise the children while appellants moved into Paternal Grandmother's apartment. Maternal Grandmother later took over these duties when Paternal Grandmother became ill.

Miller testified that she convened a family team meeting with appellants, Paternal Grandmother, and Maternal Grandmother later the same month. Father told Miller that he is an electrician and was last employed in 2020. Mother had stayed at home with the children for the past ten years. According to Miller, appellants admitted to using methamphetamine "daily or every other day" for approximately a year. Father stated that he spent approximately $240 a month on methamphetamine. According to Miller's affidavit, appellants both attributed their drug use as a means of avoiding "family problems." Father stated that he first used methamphetamine when he was seventeen years old and had not stayed clean for more than four years at a time. Mother began using when she was sixteen years old but did not use heavily until approximately a year before the removal. Mother used in the bathroom before getting the

children ready for school. Father denied that their drug use affected their parenting, but Paternal Grandmother expressed concerns regarding the children's frequent school absences and the couple's money management.

The Department conservatorship worker assigned to the case testified that she developed a family service plan for each appellant that laid out the steps necessary for them to regain custody. The plan required appellants to attend and complete an intensive patient treatment program, be successfully discharged from individual counseling, drug test regularly, and pay child support. At a status hearing in May of 2021, the associate judge made the plans an order of the court while adding requirements that appellants refrain from consuming alcohol, test negative for alcohol, and conditioned the beginning of visitation on three consecutive clean urinalysis tests.

The conservatorship worker testified that appellants initially were "doing great, and then it just fizzled out to where we had not a lot of cooperation" with drug and alcohol testing. Both parents tested negative for alcohol until September of 2021. Both parents tested negative for drugs through October of 2021; Father tested positive for methamphetamine in November of 2021 and Mother in December. Because of the positive result and several missed tests, their visits were suspended. Father completed the intensive outpatient services program twice but had positive drug tests "the majority of the time." Mother completed the program once but also continued to test positive; she attempted unsuccessfully to complete the program a second time.

The conservatorship worker testified that appellants displayed the same pattern regarding the other services: "they started wonderfully . . . and then again it just fizzled out." For example, the service plan required appellants to pay utilities for the residence where the

3

children lived. The conservatorship worker testified that the children were "left without electricity" and phone service on several occasions because of missed payments but that appellants paid the bills "for the most part." Appellants both started counseling but were unsuccessfully discharged by their counselors. Neither appellant made a complete child support payment.

The Department also presented evidence that several of the children needed extensive dental care at the time of removal. The Department's permanency report, filed with the court in August of 2021 and admitted as an exhibit a trial, states that Z.C. had "extensive dental needs" and recently had ten caps applied to her teeth while under sedation. The same report states that J.C., Jr., had "very poor oral health" at the time and needed a similar procedure. Later reports reflect that both children now have "good oral health." The conservatorship worker and the court appointed special advocate for the case (CASA) testified that Maternal Grandmother had addressed all the children's medical and dental needs.

Father moved to Arkansas in May or June of 2021. The caseworker testified that Father told her that he moved for work but never provided her with any proof of employment. He also refused her request to provide his address. Father testified that he had been in Arkansas for "six to eight weeks" at the time of trial and that he had been paying for drug tests himself. He acknowledged that the initial test was positive and insisted the Department never received the results of several negative drug tests. He explained that he did not provide test results for alcohol because Arkansas does not provide a urinalysis for alcohol. Father acknowledged that he and Mother used drugs but denied that any of the children suffered harm as a result. Father maintained that he was employed and had never failed to provide for his family.

4

Mother confirmed that her statements to Miller regarding her methamphetamine use at the time of removal were accurate. She acknowledged that she had "made a few bad choices" since the removal but insisted that she had made significant progress. She explained that she missed several drug tests because she went to Arizona twice, first in January 2021 to help her sister move in with their terminally ill grandmother and again in May following her brother's death. After returning from the second trip, she had planned to live with her sister and her boyfriend and use her sister's car. That plan fell through because her sister moved out of the house. During this time, Mother submitted approximately forty applications and was hired twice. She kept neither job because she did not have reliable transportation. The day before trial, Mother moved to Arkansas to live with Father because it was her only alternative to homelessness.

The CASA testified that the children had formed a close relationship with Maternal Grandmother and that she was meeting all their needs. She opined that it is in children's best interest to remain there because Maternal Grandmother is much more stable the parents. The CASA favored termination because it would enable Maternal Grandmother to adopt the children, which would "give[ ] her more rights to be able to protect the children." Similarly, the caseworker testified that the children should stay with Maternal Grandmother because she provides a stable home and meets all their medical and dental needs.

After closing arguments, the associate judge found with respect to Father and Mother that the Department has established two predicate grounds for termination and that termination is in the best interest of the children. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O), (b)(2). The associate judge's proposed judgment became the judgment of the district court by operation of law. *See id.* § 201.2041(a). Appellants timely filed this appeal.

**DISCUSSION**

Appellants challenge the sufficiency of the evidence supporting the judgment in two issues.[2]

Although "parental rights are of a constitutional magnitude, they are not absolute. Just as it is imperative for courts to recognize the constitutional underpinnings of the parent–child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018) (citing *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002)). A court may render judgment terminating the parent-child relationship if it finds by clear and convincing evidence that the parent's acts or omissions satisfy at least one statutory ground for termination and that termination is in the best interest of the child. Tex. Fam. Code § 161.001(b)(1), (2). "Clear and convincing evidence" is "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007. "This heightened proof standard carries the weight and gravity due process requires to protect the fundamental rights at stake." *A.C.*, 560 S.W.3d at 630.

The heightened burden of proof in parental termination cases requires "a concomitantly heightened standard of appellate review." *In re Z.N.*, 602 S.W.3d 541, 545 (Tex. 2020) (per curiam). In reviewing for legal sufficiency, a court should look at "all the evidence in the light most favorable to the finding." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). Under the clear-and-convincing standard, the reviewing court "cannot ignore undisputed evidence

---

[2] We have reorganized appellants' issues so that their first issue challenges the predicate findings and the denial of the affirmative defense and the second challenges the best interest finding. *See In re I.N.A.*, No. 03-22-00206-CV, 2022 WL 4830785, at *1 n.1 (Tex. App.—Austin Oct. 4, 2022, no pet.) (mem. op.) (reorganizing issues for clarity).

contrary to the finding" but "must otherwise assume the factfinder resolved disputed facts in favor of the finding." *A.C.*, 560 S.W.3d at 630–31. Evidence is legally insufficient if, after conducting this review, the reviewing court concludes that "no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true." *Z.N.*, 602 S.W.3d at 545 (citing *J.F.C.*, 96 S.W.3d at 266).

Factual-sufficiency review, in contrast, "requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id*. "In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id*. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*. Under either standard, the trier of fact remains "the sole judge of the witnesses' credibility and the weight to be given to their testimony." *A.A. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00307-CV, 2021 WL 5893695, at *4 (Tex. App.—Austin Dec. 14, 2021, no pet.) (mem. op.).

***Predicate Findings***

The district court found that the Department had proven two predicate grounds for termination. *See* Tex. Fam. Code § 161.001(b)(1)(E), (O). In their first issue, appellants challenge these findings and the implied finding that they failed to establish the good-faith defense to termination under Subsection (O). *See id.* § 161.001(d) (providing that "court may not order termination under Subsection (b)(1)(O) based on the failure by the parent to comply with a specific provision of a court order if a parent proves" good-faith attempt to comply). We

7

begin with the Subsection (E) finding because the supreme court has held that allowing Subsection "(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court [ ] violates the parent's due process and due course of law rights." *In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam).

Termination may be ordered under Subsection (E) if clear and convincing evidence establishes that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(b)(1)(E). In this context, "endanger" means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Although a finding of endangerment requires more than the threat of metaphysical injury or possible ill effects from a less-than-ideal family environment, the Department does not have to prove that the conduct was directed at the child or that the child suffered an actual injury. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). "Termination under subsection (E) requires more than a single act or omission, and the Department must show a voluntary, deliberate, and conscious course of conduct by the parent, considering her actions both before and after the child was removed from the home." *J.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00325-CV, 2021 WL 5456653, at *5 (Tex. App.—Austin Nov. 17, 2021, pet. denied) (mem. op.).

Appellants argue that there is no evidence of endangerment other than their use of methamphetamine. They argue that evidence of drug use "is not sufficient to show endangerment unless it is causally connected to conduct endangering a child" and that there is no such evidence here. Although we agree that "a finding of endangerment based on drug use alone is not automatic," the Department was not required to show that appellants' drug use

8

led to an independent endangering activity. *D.H. v. Texas Dep't of Fam. & Protective Servs.*, 652 S.W.3d 54, 61 (Tex. App.—Austin 2021, no pet.). Endangerment "does not have to be established as an independent proposition but may instead be inferred from parental misconduct." *Id.*; *see, e.g., S.B. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00191-CV, 2021 WL 3743829, at \*6 (Tex. App.—Austin Aug. 25, 2021, no pet.) (mem. op.) (observing that "because it exposes the child to the possibility that the parent may be impaired or imprisoned, a parent's illegal drug use and drug-related criminal activity may support termination under subsection (E)"). Here, the Department presented evidence that, at the time of removal, appellants spent approximately $240 a week on methamphetamine, the children were frequently absent from school, and two of the children had very poor oral health. *See D.H.*, 652 S.W.3d at 60 ("The failure to provide or obtain appropriate medical care for a child can constitute endangering conduct under subsection (E)."). Further, the caseworker testified that the children had no toys and that she had to explain to appellants that the money they spent on methamphetamine could be used on the children.[3] After the removal, appellants failed to pay utility bills on the residence, leaving the children and their caretaker without power. Additionally, the undisputed evidence that appellants continued to use drugs during the case when they knew their rights were in danger is further evidence of endangerment. *See J.B.*, 2021 WL 5456653, at \*6 (Evidence that "parent continued to use illegal drugs when she knew parental rights were in jeopardy 'is conduct showing a voluntary, deliberate, and conscious course of conduct, which by its nature, endangers a child's well-being'" (quoting *In re K.A.C.*,

---

[3] Father denied that the children had no toys, but the associate judge could reasonably have found that his denial was not credible. *See A.A. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00307-CV, 2021 WL 5893695, at \*4 (Tex. App.—Austin Dec. 14, 2021, no pet.) (mem. op.) (mem. op.).

594 S.W.3d 364, 373 (Tex. App.—El Paso 2019, no pet.))). Under the circumstances, the associate judge could reasonably infer that appellants' drug use endangered the children.

Considering the entire record, we conclude that a reasonable factfinder could form a firm belief or conviction that appellants knowingly engaged in a course of conduct that endangered the children. *See* Tex. Fam. Code. § 161.001(b)(1)(E). The evidence is therefore factually sufficient to support those findings. Because the evidence is factually sufficient, it is necessarily legally sufficient. *See A.F. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-21-00670-CV, 2022 WL 2068818, at *7 (Tex. App.—Austin June 9, 2022, pet. denied) (mem. op.) ("Evidence that is factually sufficient to support a trial court's finding necessarily satisfies the legal-sufficiency standard."). We do not address their challenge to the Subsection (O) finding, including the rejection of their affirmative defense under Section 161.001(d), because only one predicate finding is required to support the judgment. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We overrule appellants' first issue.

### *Best Interest*

Next, appellants argue that the record contains legally and factually insufficient evidence that termination is in the best interest of the children. The best-interest analysis "is child-centered and focuses on the child's well-being, safety, and development." *A.C.*, 560 S.W.3d at 631. "[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). To determine whether termination is in a child's best interest, we consider the non-exclusive Holley factors:

- the children's wishes;

- the children's present and future emotional and physical needs;

- any emotional and physical danger to the children now and in the future;

- the parental abilities of the individuals seeking custody;

- the programs available to assist the individuals seeking custody;

- the plans for the child by the individuals or agency seeking custody;

- the stability of the proposed placement;

- parental acts or omissions which may indicate that the existing parent-child relationship is improper; and

- any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). A best-interest finding does not require proof of a specific factor or set of factors. *C.H.*, 89 S.W.3d at 27. Moreover, "a parent's statutorily offensive conduct is often intertwined with the best-interest determination, and the same evidence may be probative of both issues." *E.E. v. Texas Dep't of Fam. & Protective Servs.*, 598 S.W.3d 389, 400 (Tex. App.—Austin 2020, no pet.).

We begin with the wishes of the children. The caseworker testified that T.C. has consistently said that he "would be happier with [Maternal Grandmother]" and does not "care about going back to his mom and dad." There was no direct evidence of the desires of the other children. The CASA testified that the children "love and miss their parents very much" and were negatively impacted by the reduction in visits caused by their parents moving out of state. On the other hand, the CASA testified that the children have a "very close relationship" with Maternal Grandmother. The court could consider that the children are bonded with Maternal Grandmother and have spent minimal time with appellants. *Cf. In re L.G.R.*, 498 S.W.3d 195,

11

205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("When a child is too young to express [his] desires, the factfinder may consider that the child has bonded with the foster family, is well cared for by them, and has spent minimal time with a parent." (citing *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.))).

Turning to the children's present and future physical and emotional needs and any physical and emotional risks to the children now or in the future, "it is well settled that stability and permanence are paramount considerations in evaluating the needs of a child." *N.K. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00028-CV, 2022 WL 2673236, at *8 (Tex. App.—Austin July 12, 2022, no pet.) (mem. op.). "[A] parent who lacks stability, income, and a home is unable to provide for a child's emotional and physical needs." *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (citing *In re J.R.W.*, No. 14-12-00850-CV, 2013 WL 507325, at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied)(mem. op.)). Appellants failed to consistently pay the utility bills on the house where the children were staying or to pay the child support ordered by the court. Neither appellant kept in communication with the Department. According to the caseworker, Father failed to provide his address after moving to Arkansas or any proof of employment. On the other hand, Father testified that he is living on a property with "no address" and "no mailbox or nothing" and that Miller never requested pay stubs. Mother also failed to keep in contact with the Department.

Appellants' drug use also supports the finding. *See S.C. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00039-CV, 2020 WL 3892796, at *16 (Tex. App.—Austin July 10, 2020, no pet.) (mem. op.) ("Illegal drug use supports a finding that termination is in the best interest of the child; the factfinder may give great weight to this significant factor." (citing *L.G.R.*, 498 S.W.3d at 204–05)). Appellants continued to test positive for methamphetamine

12

when they knew their parental rights were in jeopardy. *See J.B.*, 2021 WL 5456653, at *7 (holding that parent's "ongoing drug use" supported best-interest finding). Moreover, Father continued to test positive despite completing intensive outpatient services—a drug treatment program—twice. Mother tested positive after completing the program once and attempted unsuccessfully to complete the program again. Their continued drug use supports that drug treatment programs are ineffective for them. *See In re B.L.H.*, 609 S.W.3d 271, 281 (Tex. App.—Texarkana 2020, pet. denied) (explaining that parent's "positive drug tests" following "release from inpatient drug treatment showed that the programs were not working").

With respect to any evidence that the parent-child relationship is improper, appellants have shown an inability to care for their children. Appellants were spending hundreds of dollars a month on methamphetamine at the time of removal, when two of the children needed dental work so significant that it required anesthesia. *See M.D. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-20-00531-CV, 2021 WL 1704258, at *7 (Tex. App.—Austin Apr. 30, 2021, no pet.) (mem. op.) (stating that evidence that child required "'fairly major dental work' to address dental problems that arose before his removal" was evidence of endangerment). After the removal, they failed to refrain from drug use, successfully complete counseling, or pay child support. *See In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding that evidence parent failed to complete court-ordered service plan can support best-interest finding). By the time of trial, appellants' visits with the children had been suspended for months as a direct result of their continued drug use and missed tests. The CASA testified that appellants' extended absence was "very destructive" to the children's emotional well-being. *See C.C. v. Texas Dep't of Fam. & Protective Servs.*, 653 S.W.3d 204, 219 (Tex. App.—Austin 2022, no pet.) (stating that evidence of parent's "recidivist drug use" and absences were evidence of improper relationship).

13

Appellants attribute their failures to obstacles posed by Father's job, injuries Father sustained in a motorcycle accident, and that Mother was completely dependent on Father for transportation.

In contrast, the Department presented evidence that Maternal Grandmother is meeting the needs of all four children. When asked to explain her opinion that it is in the best interest of the children to remain with Maternal Grandmother, the conservatorship worker stated that all the children's "medicals and dentals have been done. All of that has been taken care of." More generally, she provides a home "where there's no drug use, no, you know, instability" and she has "been a constant presence through all of this when mom and dad were not present." Both the conservatorship worker and the CASA testified that termination was in the best interest of the children so that Maternal Grandmother could adopt them and provide a permanent home.

With respect to the plans for the children, the conservatorship worker testified that the Department plans for the children to remain with Maternal Grandmother. Maternal Grandmother currently has few financial resources but intends to return to work and is applying for social security benefits. Neither appellant articulated a plan for the children beyond a general desire to regain custody and raise the children in the future.

Appellants do not dispute that they are not ready to regain custody of the children now but maintain that termination is not in the best interest of the children. Specifically, they argue that appointing Maternal Grandmother as managing conservator and appellants as possessory conservators would encourage appellants "to continue pursuing sobriety and provide the children with the relationships that they treasure and rely on the most'" while safeguarding the children. They reason that a "parent who has actively taken the steps necessary toward sobriety, absent any showing of harm or endangerment to the children, should at the very least retain the right to be a possessory conservator of his children." In essence, they contend that

14

they have shown enough improvement that the "strong presumption" in favor of preserving parental rights requires affording them more time to demonstrate they can be fit parents in the future. "Although courts presume that preserving the parent-child relationship is in the best interest of the child, it is the 'child's need for permanence through the establishment of a stable, permanent home' that is 'the paramount consideration in a best-interest determination.'" *F.H. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-22-00231-CV, 2022 WL 4540839, at *7 (Tex. App.—Austin Sept. 29, 2022, pet. denied) (mem. op.) (quoting *E.N. v. Texas Dep't of Fam. & Protective Servs.,* No. 03-21-00014-CV, 2021 WL 2460625, at *8 (Tex. App.—Austin June 17, 2021, no pet.) (mem. op)). Taken together, the record before us would enable a reasonable factfinder to conclude that appellants would be unable to provide that stability in the future. *See J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 525 (Tex. App.—Austin 2019, no pet.) ("[A] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." (citing *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.))).

Considering the entire record, we conclude that a reasonable factfinder could have formed a firm belief or conviction that termination is in the best interest of the children. Thus, the evidence is factually sufficient to support that finding. Because the evidence is factually sufficient, it is necessarily legally sufficient. *See A.F.*, 2022 WL 2068818, at *7. We overrule appellants' second issue.

## CONCLUSION

We affirm the district court's judgment.

15

_____

Edward Smith, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed:   February 23, 2023